## Commonwealth v. McCabe

*Frederick B. Smillie,* for Commonwealth.
*T. Lane Bean,* for defendant.

DANNEHOWER, J., May 6, 1940.—Defendant, Benjamin McCabe, was indicted and tried for the crime of murder. The jury found defendant guilty of murder in the first degree, and fixed the penalty at life imprisonment. A motion for a new trial was filed on the sole ground that the trial judge erred in excluding certain evidence of defendant's expert in psychiatry to the effect that defendant was a moron, and although 22 years of age had the mental age of an eight year-old child and an I. Q. of 50 plus.

The testimony produced on behalf of the Commonwealth revealed that on January 1, 1940, at about 3 p.m., defendant and his wife quarreled in their second-floor apartment in Lansdale, Montgomery County, Pa.; that the wife left the apartment and their 40 day-old baby, who was in a healthy and normal condition; that, about an hour later, the baby was found dead in its crib; that death was caused by suffocation, and defendant, who had

been alone with the baby, days later admitted to his wife, then to a police officer, and finally to two assistant district attorneys, that he had smothered the baby with a pillow, because it came between him and his wife, and would never have a chance in life.

Defendant denied that he smothered or touched the baby in any way while he was alone with it in his apartment for an hour. He freely admitted that he had made the alleged confessions of guilt to these four persons because he was angry with his wife. He also testified that he could count to 50, that he could read and write very little, and that he left public school in the seventh grade when he was 14 years of age. He did not plead insanity, and his attorney, when asked, stated that the defense was not one of insanity.

The defense called Dr. Harry C. Podall, an expert psychiatrist, who had examined defendant in the prison on February 24, 1940, a month and 24 days after the alleged crime, and who, after qualifying as an expert, was asked:

"Mr. Bean:

Q. Will you briefly describe what you find here so far as mentality is concerned?

Mr. Smillie: Objected to. The presumption is he is normal unless there is a plea of insanity. If there is the Commonwealth will join in it. If there is any contention this man is not normal the Commonwealth will join in it.

Mr. Bean: There is a distinction between insanity and mental delinquency. There is no plea of insanity being offered, this witness is called because at the instance of the court he examines all these cases, and he is here now to tell you about the mental condition of this individual. You have offered alleged statements made by this person. We want to know whether it is possible to rely upon them. Here is the official psychiatrist and here is his report.

Mr. Smillie. Who says he is sane.

The Court: Mr. Bean, I don't mean to prejudge it, but is your defense that this defendant is irresponsible for anything that he says or does?

Mr. Bean: I don't know whether we can use that word. We propose to show he is 22 or 23 and that he has the mentality of a child of seven, that he can't read, that he can't write. That he understands words like "Pig" but if you would ask him to spell "Rat" the chances are he couldn't. This man has analyzed his mental condition with a view of finding out whether or not we can rely on anything the man might say. We don't know whether it is true or false.

Mr. Smillie: This opens a new page in criminal defense. If counsel or this man will say he is not competent, doesn't know right from wrong the Commonwealth will join in it. It does not want to try anybody of that kind. Doctor Podall examined this man at my request and we found him to be sane. If a psychiatrist can be called to throw discredit upon the statements made by the defendant then we are opening up a new field.

Objected to and ask that the witness be withdrawn.

The Court: Objection sustained, exception allowed the defendant."

The written report submitted by Dr. Podall also shows that defendant was given a Simon Binet test, and the findings were "that defendant has a mental age of 8 years and 3 months, an I. Q. of 50 plus, that he is a moron, that he is not insane, and is responsible for all his actions".

The question presented, therefore, is: At the trial of an indictment for murder against a defendant 22 years of age, whose defense is that he did not commit the crime but freely admits that he made confessions of guilt to four different persons, and who does not plead insanity— was it proper for the trial judge to exclude testimony of defendant's expert that defendant was a moron having a mental age of eight years, either as a defense, or affect-

ing the weight of the confessions, or in mitigation of the penalty?

The fact that defendant is a moron is no defense to crime. Criminal responsibility does not depend upon the mental age of defendant, nor upon the question whether the mind of the prisoner is above or below that of the ideal, or of the average, or of the normal man, but upon the question whether defendant knows the difference between right and wrong, can understand the nature and quality of his act, so as to be able to perceive its true character and consequences to himself and others. As was so well said in Commonwealth v. Wireback, 190 Pa. 138, 147:

". . . the moral guilt of one man, by reason of vicious training or inferiority of intellectual power, may be less than that of another, but the law takes no note of this in fixing responsibility for crime; nor dare it do so, if society is to be protected."

Since the 22-year-old defendant did not attempt to prove or plead insanity, evidence that he was a moron of the mental age of eight years was inadmissible as a defense.

It is contended by counsel for defendant that the exclusion of such evidence tending to show lack of mentality of defendant as to the alleged confessions was also error. It must be clearly noted that defendant did not attempt to repudiate his confessions in any particular, except he did testify that he did not tell one of the assistant district attorneys that the baby turned blue. In all other condemning particulars his memory coincided exactly with the words and surrounding circumstances of the persons to whom he confessed. He testified, in effect, that these confessions were conscious and voluntary statements free from any improper inducement or influence. There was no intimation, contention, or evidence offered that defendant was not of sufficient mental capacity to understand what he was saying, or that he was not in full possession of his faculties, or that his mind was con-

trolled by a superior force or intellect at the times he confessed his guilt. However, defendant sought to show by expert testimony that, many days after he confessed, he was found to be a moron with the mental age of an eight-year-old child. Upon the witness stand, defendant freely admitted the confessions, accurately remembered the circumstances of each, and acted and talked reasonably intelligently, understanding the character and effect of what he was saying and comprehending the situation generally. Under all the circumstances, we cannot see how the exclusion of such evidence was error. If defendant had offered to show that at the times of the alleged confessions he was intoxicated, insane, drugged, hysterical, or not able to exercise his faculties, such evidence would be admissible in determining the character and weight of the confessions.

Our criminal code provides that in murder trials the jury shall determine the degree and, in the event of a first degree verdict, fix the penalty at death or life imprisonment. Under our procedure, evidence in mitigation of the punishment, if admissible, must be considered along with the general body of the evidence from which the guilt or innocence of the accused is to be determined. Mitigating circumstances in relief of the penalty may in a proper case be admitted, but it is largely a matter in the discretion of the trial judge, who must exercise sound judicial judgment. It should be such evidence that in fairness and mercy a jury or a judge should consider it in imposing sentence, and the jury should be clearly instructed as to its purpose and that it must be considered only after a verdict of first degree is found: Commonwealth v. Williams, 307 Pa. 134.

Under the evidence in this case, defendant was either innocent or guilty of murder of the first degree. The trial judge, in the exercise of a sound discretion, could have admitted defendant's testimony that defendant was a moron, for the consideration of the jury in fixing the penalty. The exclusion of such evidence, however, was

not prejudicial error, because the jury gave defendant the lesser of the two penalties prescribed, for murder of the first degree.

We conclude, therefore, that the exclusion of such evidence was not prejudicial error, and we can see no legal reason for disturbing the verdict of the jury.

And now, May 6, 1940, for the foregoing reasons, defendant's motion for a new trial is overruled and refused, and it is ordered that defendant, Benjamin McCabe, be produced in courtroom "A", on Friday, May 10, 1940, at 9 a.m. (e. s. t.), to receive sentence.